IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 12 CR 755 |
| | ) | Judge Ronald A. Guzmán |
| BENITO MOJICA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

On September 27, 2012, in the vicinity of 47th and Kildare streets in Chicago, Illinois, law enforcement agents executed a federal arrest warrant for the defendant, Benito Mojica. After his arrest, the defendant was taken to the front of the address he had given as his home, 3810 W. 46th Place Chicago, Illinois, and given an advice of rights form, which he refused to sign. He did, however, acknowledge that he understood his rights, and declared that he wished to have an attorney and did not wish to give a statement. He was then transported to the FBI building for processing without ever going inside his home. He was never asked for permission to search the home. After the defendant's departure, the agents executed a search warrant for the first and second floors of the Mojica residence. In addition, a Spanish-speaking FBI agent, Gustavo Martinez, interviewed the defendant's spouse, Sonia Mojica. After obtaining consent to search the garage from Mrs. Mojica, Agent Martinez conducted a search of the garage and recovered the evidence that the defendant seeks to suppress. The garage was detached and located in the backyard facing the alley. Neither the defendant nor the government introduced any evidence as to what specific property was seized from the garage; therefore, if the court were to grant the motion to suppress, a second hearing would be required to determine what exactly was being suppressed.

Defendant contends that the consent which the government obtained from Mrs. Mojica is invalid because she lacked authority over the area searched, *i.e.*, the garage. In *United States v. Matlock*, 415 U.S. 164, 170 (1974), the Supreme Court determined that a consent to search is valid only if the party giving the consent has authority over the area searched. *Matlock* also established that the consent of one who possesses common authority over the premises is valid as against an absent, non-consenting person with whom that authority is shared. *Id.* Such authority rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 171 n.7. The Court, then, must determine whether Mrs. Mojica enjoyed sufficient mutual use or control or other sufficient relationship to the garage to conclude that the defendant assumed the risk that she

might consent to a police search of the garage.  Further, a spouse presumptively has authority to consent to a search of all areas of the homestead.  The non-consenting spouse may rebut this presumption only by showing that the consenting spouse was denied access to the particular area searched.  *United States v. Duran*, 957 F.2d 499, 505 (7th Cir. 1992).  Thus, we look specifically to determine whether, or to what extent, Mrs. Mojica was denied access to the garage.  The testimony in this respect varied significantly.

Mrs. Mojica testified through a Spanish/English interpreter that she had been married to the defendant for 21 years, had three children, and that the family lived at the address of 3810 W. 46th Place for approximately 10 years.  Mrs. Mojica works outside the home and her income helps pay the mortgage which encumbers the household property.  She testified that the family occupied the street level apartment of the home and leased the basement apartment and the upstairs apartment to tenants.

According to Mrs. Mojica, the garage was primarily used by the defendant as a workshop for his carpentry business.  However, it was also used to store household items such as bicycles, a lawn mower, and a refrigerator containing food and drink for the household was kept.  Mrs. Mojica agreed with her two daughters that the garage door was generally locked and that the defendant maintained possession of the key but at times, the defendant would leave the garage door open when he worked there.  On direct examination, Mrs. Mojica testified that she always had to ask her husband for permission to enter the garage and to get keys from him.  At the time of the search, the agents gave Mrs. Mojica the keys to the garage along with the defendant's wallet and a belt they had recovered from him.  According to Mrs. Mojica, the defendant virtually never took the keys out of his pants pockets to lay them down anywhere for any reason and that the keys were never left in the house.  On cross-examination, however, when asked if she had spoken to Agent Martinez a week before the hearing and told him that her husband would sometimes leave the keys to the garage in the house, she did not deny having said this, but responded only that she could not recall if she had said that to Agent Martinez.  Mrs. Mojica also testified that she was not informed she had a right to refuse to sign the consent form and that she could not even recall in what language she was asked for permission to search the garage.

Both of the defendant's daughters testified that they routinely asked their mother for permission to enter the garage, not their father.  Mrs. Mojica corroborated this testimony.  The children did not testify that they were ever given permission to enter the garage by their mother, but denied access to the keys by their father.  In addition, Mrs. Mojica testified that at times the children would ask her for permission to enter the garage when Mr. Mojica was out of the house.  On those occasions she would give them permission, but they would have to wait for their father to return with the keys.  The daughters' practice of asking Mrs. Mojica for permission to enter the garage allows the Court to reasonably infer that Mrs. Mojica made independent determinations as to whether the children would be allowed access to the garage without consulting her husband.

One of the daughters, Guadalupe Mojica, a 20-year-old student at Columbia College, confirmed that her father always carried with him the only set of keys to the garage, which he

kept locked. In fact, the garage door had three locks. He kept his tools and machines for his cabinet and handyman business in the garage. On direct examination, Guadalupe testified that if her father was not home, she could not ask him for the keys and therefore could not get into the garage. She also testified that she, her older sister and her brother were given permission from time to time to enter the garage to retrieve their bicycles or the lawn mower, but that she rarely went into the garage. She testified that a person she knows as Rogelio Gallegos also entered the garage at times to help her father with his work. According to Guadalupe, the defendant never told her or any other family member, including her mother, not to go into the garage.

The defendant's younger daughter, Bernice Mojica, 17 years of age, also testified. Her testimony generally corroborated the other witnesses' testimony that her father had the only keys to the garage door. She also testified that in seeking access to the garage, she would first ask her mother for permission and after that she would ask her father for the keys.

None of the defendant's witnesses testified that they were ever denied access to the garage after requesting it. Mrs. Mojica admitted that her husband never denied her permission to go into the garage. Further, she admitted that the defendant never told her that she could not use the keys to go into the garage, and that she knew which keys opened the garage door.

In addition to the seeming inconsistencies in the testimony as discussed above, Mrs. Mojica's testimony was directly contradicted to a significant extent by Special Agent Martinez of the FBI/Chicago Drug Task Force. Agent Martinez testified that after the defendant indicated he did not wish to give a statement and asserted his right to counsel, Agent Martinez refrained from asking him to consent to the search of his home. The defendant was then taken to be processed by other law enforcement officers. Agent Martinez testified that he spoke to Mrs. Mojica in Spanish at the scene after the defendant was removed and interviewed her again a week before the instant hearing. Agent Martinez testified that when Mrs. Mojica signed the consent to search the garage, she did not tell Agent Martinez that she could not enter the garage without her husband's permission or that she only entered the garage when the door was unlocked. Agent Martinez also testified that Mrs. Mojica was informed that she did not have to sign the consent. In fact, the consent form, which is in Spanish, states that Mrs. Mojica has been advised of her right to refuse consent and that she gave her permission voluntarily. Mrs. Mojica denied she knew she did not have to sign the consent, although she admits that she can read Spanish. On cross-examination, Mrs. Mojica admitted that she signed the consent form voluntarily.

Agent Martinez also testified that when he spoke to Mrs. Mojica a week before the suppression hearing, she asserted that she did not need permission to go into the garage. He further testified that Mrs. Mojica told him that the defendant would sometimes take the garage keys with him when he went out and at other times would leave them behind. This is directly contrary to Mrs. Mojica's testimony that the keys never left her husband's pocket, but makes more sense in light of the testimony of both daughters and Mrs. Mojica that the daughters would ask Mrs. Mojica for permission to enter the garage even when the defendant was not present. Moreover, given the testimony that the garage was used to store bicycles, the lawnmower and

food and drink for the family, the witnesses' testimony that the defendant kept such tight control of the keys to the garage that he would virtually never allow them out of his pocket is less credible. When asked what Mr. Mojica did with the keys when he slept, Mrs. Mojica testified that even when he took his pants off to go to sleep, the keys would remain in his pockets. When asked at the hearing if, on September 27, 2012, she told the agents that she would go into the garage on different occasions, but not as frequently as her husband, Mrs. Mojica testified that she does not remember if she made that statement or not. Mrs. Mojica's testimony in this regard seems contrived as does her assertion that she did not know that she could refuse to sign the consent to search the garage. Agent Martinez's testimony in this regard was quite clear: He informed her that she had a right to refuse consent, the decision was hers to make and that she had a right to withdraw her consent at any time.

For these reasons, the Court finds Agent Martinez's testimony more credible than that of Mrs. Mojica. The Court is convinced by the evidence that although the defendant had primary possession of the keys to the garage, his possession was not exclusive. He left the keys at home on occasion and Mrs. Mojica, though not always possessing the keys, had the right to authorize entry to the garage without specific permission from the defendant, as demonstrated by the testimony that the children would ask her permission to enter even when Mr. Mojica was not at home. Thus, the Court concludes that Mrs. Mojica had actual authority to consent to the search of the family's garage.

Furthermore, even if Mrs. Mojica did not have actual authority she certainly had apparent authority. She told agent Martinez that she had been married to the defendant for 21 years and that they had been living at that residence, 3810 W. 46th Place, which they owned, for ten years. Mrs. Mojica told Agent Martinez that she rarely went into the garage, but that the last time she was in the garage was in the summer to get a soda. Neither she nor anyone else ever told the agents that she did not have authority to consent, was not allowed to enter the garage without the defendant's permission, could only go into the garage when the garage door was unlocked or that Mr. Mojica kept control of the keys virtually 24 hours a day. Having no information to the contrary, the agents were allowed to rely on the presumption that a spouse has authority to consent to a search of all areas of the homestead.

The Court does not read the motion to suppress to allege that the consent was knowingly and voluntarily given. However, for the sake of completeness, the Court finds that the consent was both knowing and voluntary. The agent testified that he informed Mrs. Mojica of her right to refuse or to withdraw her consent at any time. The form itself, which Mrs. Mojica signed, is quite explicit. It states that special agents of the FBI have asked for permission to conduct a search of the premises and the garage located at 3810 W. 46th Pl., Chicago, IL, that the person being asked for consent has been notified that he has a right to refuse to give his consent and that the consent is being given voluntarily. Finally, the consent form states that the person signing is authorizing the agents to take any article they determine is related to their investigation. Both the consent form and Mrs. Mojica's conversation with Agent Martinez were in the Spanish language, which she understands.

For all these reasons, the defendant's motion to suppress [987] is denied.

Dated: January 26, 2015

**SO ORDERED**  **ENTER:**

---------------------------------------
**RONALD A. GUZMAN**
**District Judge**