IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| United States of America, | ) | |
| --- | --- | --- |
| | ) | Case No: 12 CR 755-5 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| Benito Mojica, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motions for acquittal notwithstanding the verdict and for a new trial (Dkt. ## 1073, 1181) are denied.

# STATEMENT

**Background**

After a jury trial, Defendant Benito Mojica was found guilty of one count of conspiracy to distribute a controlled substance (cocaine) (Count I), two counts of unlawful possession of a controlled substance (cocaine) with intent to deliver (Counts II – III); and four counts of unlawful use of a communication device (cell phone) to facilitate the commission of a felony (conspiracy to distribute and possession with intent to distribute a controlled substance) (cocaine) (Counts IV – VII).

**Relevant Standards**

Motion for Judgment of Acquittal – Rule 29

Federal Rule of Criminal Procedure Rule 29(a) provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

"In challenging the sufficiency of the evidence, [a defendant] bears a heavy, indeed, nearly insurmountable, burden." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010). The reviewing court will view the "evidence in the light most favorable to the prosecution," and the defendant "must convince" the court that, even in that light, "no rational trier of fact could have found him guilty beyond a reasonable doubt." *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009) (internal quotation marks and citation omitted). In other words, a court will "set aside a jury's guilty verdict only if 'the record contains no evidence, regardless of how it is

weighed,' from which a jury could have returned a conviction." *United States v. Presbitero*, 569 F.3d 691, 704 (7th Cir. 2009) (quoting *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008)). It follows that under Rule 29, courts "do not reassess the weight of the evidence or second-guess the trier of fact's credibility determinations." *United States v. Arthur*, 582 F.3d 713, 717 (7th Cir. 2009). This strict standard recognizes that "[s]orting the facts and inferences is a task for the jury." *Warren*, 593 F.3d at 547. Indeed, the Seventh Circuit teaches that:

> [t]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Moore*, 572 F.3d at 337 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)).

Motion for a New Trial – Rule 33

Rule 33 of the Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "'[C]ourts have interpreted [Rule 33] to require a new trial in the interests of justice in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial.'" *United States v. Eberhart*, 388 F.3d 1043, 1048 (7th Cir. 2004), overruled on other grounds, 546 U.S. 12 (2005) (citation omitted).

"A jury verdict in a criminal case is not to be overturned lightly," however, "and therefore a Rule 33 motion is not to be granted lightly." *Eberhart*, 388 F.3d at 1048 (citation and internal quotation marks omitted). The court "may grant a new trial if the jury's verdict is 'so contrary to the weight of the evidence that a new trial is required in the interest of justice.'" *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999) ("The focus in a motion for a new trial is not on whether the testimony is so incredible that it should have been excluded. Rather, the court considers whether the verdict is against the manifest weight of the evidence, taking into account the credibility of the witnesses.") (citation omitted). In other words, "[t]he court should grant a motion for a new trial only if the evidence 'preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (citation omitted).

**Analysis**

      1.     <u>Motion to Suppress</u>

According to the testimony at the suppression hearing, law enforcement agents arrested Defendant on the morning of September 27, 2012 near his daughter's school. The agents took Defendant back to his house and gave him a Spanish advice of rights form. Defendant refused to sign the form and stated that he wanted an attorney. Defendant, without having entered his house, was transported to law enforcement offices for processing. After Defendant left the scene, a Spanish-speaking agent interviewed Sonia Mojica, Defendant's wife, who told agents that she had been married to Defendant for nineteen years, and they had owned and lived in their house for ten years. She further stated that she rarely went into the garage where Defendant worked on carpentry, and that the last time she had been in the garage was during the summer to get a soda. FBI agent Martinez testified that upon being given a Spanish consent to search form, Sonia Mojica voluntarily signed the form and provided agents with keys to the garage. Upon searching the garage, agents found two plastic baggies containing a white powdery substance, various documents, and mobile cell phones. The parties submitted briefs on Defendant's motion to suppress and the Court held a hearing.

Defendant contends that the Court erred in denying his motion to suppress the evidence seized from his garage on the ground that Sonia Mojica did not have authority to consent to the search. *United States v. Hernandez*, No. 114CR00242TWPTAB, 2016 WL 1627729, at *3 (S.D. Ind. Apr. 19, 2016) (An "exception to the warrant requirement applies 'to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises,'" and "'common authority rests on mutual use of the property by persons generally having joint access or control for most purposes'") (citation omitted). Mojica notes that the Court heard testimony from his wife and two daughters that they had very limited access to the garage at his house, and that it remained locked at almost all times. However, the Court credited the testimony of FBI Agent Martinez who testified that Sonia Mojica told him that she had access to the keys to the garage because they were often left at the house. The Court also noted that the children testified that "they would ask Mrs. Mojica for permission to enter the garage, not [Defendant]" and that various members of the house indicated that they entered the garage for different reasons. (Mot. Suppress Tr. at 102-106.)

Defendant's attempt to discredit Agent Martinez's reliance on statements made by Sonia Mojica, and his assertion that the Court erred in finding Agent Martinez more credible are unavailing. The Court presided over the hearing, listened to the testimony, and viewed the demeanor of the witnesses, and found Agent Martinez to be a credible witness while Sonia Mojica was not. The Court finds no basis on which to revisit its ruling on the motion to suppress.

2. <u>Testimony of Joseph P. Mahr Regarding Interview of Laura Zamudio</u>

Defendant next contends that the Court erred in barring the testimony by his investigator, Joseph Mahr, regarding his interview of potential witness Laura Zamudio, who asserted her Fifth Amendment privilege not to testify. Defendant sought to admit Mahr's testimony pursuant to Federal Rule of Evidence 804(b)(3), which is an exception to the rule against hearsay for statements against interest made by an unavailable witness. According to Defendant, "[a]fter hearing counsel for [Defendant's] offer of proof as to Mr. Mahr's testimony and argument on the issue, the court sustained the government's objection to Mr. Mahr's testimony and barred Mr. Mahr's proffered testimony." (Mot. New Trial, Dkt. # 1073, at 12.) He goes on to argue that Mahr's testimony was admissible under Fed. R. Evid. 804(b)(3).

Defendant, however, fails to include the transcript of the discussion on this issue, so the Court has no basis on which to review its ruling. Nevertheless, in a written ruling regarding Ms. Zamudio's assertion of the privilege against self-incrimination, the Court stated:

> Defendant does not deny that he rented the apartment to his alleged coconspirators, but denies it was for the purpose of aiding the conspiracy by providing a stash house. The defense has announced it intends to call as a witness Laura Zamudio, the former girlfriend of Luis Ramirez Padilla, one of the alleged coconspirators to whom the apartment was rented. She was present when the deal to rent the apartment was struck and will allegedly testify that there was no discussion of using the apartment as a stash house at that time. The Court first learned of Ms. Zamudio's existence when the defendant himself addressed the Court on the eve of trial to complain that his attorney had not been able or willing to locate Ms. Zamudio although he, Mr. Mojica, believed she would exonerate him. Defense counsel explained he had an investigator looking for Ms. Zamudio, but had been unable to locate her. The Court then, with the defendant's cooperation, enlisted the aid of government, which found and interviewed Ms. Zamudio shortly thereafter.
>
> . . .
>
> The Court also finds that Ms. Zamudio's anticipated testimony, as set forth in the statement she gave to government agents once they located her, is not particularly probative. The government has not asserted, and there has been no evidence to suggest, that the defendant discussed the use of the apartment as a cocaine stash house with Luis Ramirez Padilla when they transacted the contract to lease the apartment. On the contrary, the evidence has been that defendant allegedly discussed using the apartment to store cocaine and drug money for the conspiracy with José DeJesus Ramirez Padilla, not Luis Ramirez Padilla. Thus, this witness' testimony that there was no discussion between Luis Ramirez Padilla and the defendant about using the apartment as a stash house would not directly rebut the government's evidence. As such, it would have little probative value. In addition,

4

> the evidence has been that the defendant and José DeJesus Ramirez Padilla never directly discussed their drug transactions even with each other, but rather spoke in code, using oblique references to the existence of either drugs or money. Thus, it would not be particularly probative that the defendant did not openly discuss the use of the apartment as a stash house with Luis Ramirez Padilla in front of others. Indeed, it would appear to be out of character if he had done so. Finally, the defendant has not exhausted the possibilities of presenting such evidence through other means. There has been no effort to call either Luis Ramirez Padilla or Helein Ramirez Padilla, both of whom were present during the same conversations and have already pleaded guilty. For these reasons, the Court finds that the inability to obtain the testimony of Ms. Zamudio is not crucial to the defense or prejudicial to the defendant's ability to properly defend himself from the charges the government has placed against him.

(6/5/14 Order, Dkt. # 766, at 5-6.)

While Defendant disagrees with the Court's conclusion, he has provided no basis upon which the Court finds that a new trial is warranted.

3.  Sufficiency of the Evidence

According to Defendant, the jury's verdict was against the manifest weight of the evidence and the Court should enter a judgment of acquittal pursuant to Rule 29 as to Counts 1 to 3 and grant Defendant's motion for a new trial pursuant to Rule 33 as to all counts. Again, the Court notes at the outset that Defendant failed to provide copies of the relevant transcript excerpts. Defendant contends that with respect to the conspiracy counts, the government failed to prove a conspiracy as opposed to a buyer-seller relationship.

The jury heard testimony of Jesus Ramirez-Padilla, also known as "Gallo," who was a cooperating witness and head of the drug trafficking organization of which Defendant was alleged to have been a member. Gallo testified about the operation of the organization, the players involved, and the importance of having a stash house to store the money and drugs for the organization. Gallo stated that he had asked Defendant to allow Gallo's brothers to move into the apartment above Defendant's garage in order to store money and drugs there.

Further, the jury heard over 30 intercepted phone calls in which Defendant, among other things, ordered cocaine from Gallo, discussed the quality of the cocaine that he had received from Gallo, agreed to act as a lookout to facilitate cocaine transactions, agreed to rent the apartment above his garage to Gallo's brothers, and communicated with Gallo about the details and logistics surrounding certain cocaine transactions. In addition, the jury was presented with extensive testimony regarding photos of Defendant's apartment that had purportedly been used as a stash house as well as the physical evidence that was retrieved from the search of the apartment, including the baggies containing cocaine and money. The Court concludes that this evidence is sufficient to support a finding of conspiracy. *United States v. Speed*, 656 F.3d 714,

717 (7th Cir. 2011) (in order to establish a conspiracy, "[t]he government must demonstrate an understanding – explicit or implicit – among co-conspirators to work together to distribute drugs to third parties.").

With respect to possession with intent to distribute cocaine on July 28, 2012 (Count II) and September 27, 2012 (Count III), the jury heard the following telephone calls with accompanying testimony from Gallo, as set forth in the government's brief:

> July 28, 3:06, 2775, TP23. Mojica ordered a half from Gallo. Gallo told him that he would have his brother bring it downstairs.
>
> July 28, 2778, TP23. Gallo called Luis and told him to give him the half so that Mojica does not complain. Luis agreed to deliver the half to Mojica.
>
> July 28, 3:45, 2785, TP23. Gallo and Mojica discussed the half and discussed the poor quality of drugs that Luis gave to Mojica. Gallo told Mojica that he would tell his brother to deliver the drugs to him. Mojica told Gallo that he would be in the garage.
>
> July 28, 4:03p.m., 2787,TP23. Gallo told Luis to take down the half for the homeowner. Luis told Gallo that he took the half to him, but he only gave him $500, a double hundred is missing. Gallo told Luis that he was going to call him and see what he thought about it.
>
> July 28, 4:07, 2789, TP23. Gallo asked Mojica if he had seen the drugs. Mojica told Gallo that it was fine.

(Govt's Resp., Dkt. # 1214, at 14-15.) Further, with respect to Count III, possession with intent to distribute on September 27, 2012, the date of Defendant's arrest, agents testified that they seized baggies containing a white powdery substance from Defendant's garage, that the substance had been tested and was determined to be cocaine, and that the amounts were considered to be distribution amounts.

The three elements required for a conviction under 21 U.S.C. 841(a)(1) are knowing and intentional possession, possession with the intent to distribute, and knowledge that the material is a controlled substance. *United States v. Campbell*, 534 F.3d 599, 605 (7th Cir. 2008). The calls listed above provide a sufficient basis, when construing the evidence in a light most favorable to the government, for a jury to conclude that Mojica possessed cocaine with the intent to distribute. While Defendant contends that the amount of cocaine he possessed, if at all, was for personal use, the jury was not required to believe Defendant's version of the evidence in light of the testimony by Agent Coleman that certain quantities of drugs, as well as the fact that the cocaine was found in six individually-wrapped smaller baggies, renders the cocaine to have been obtained for distribution.

As to Counts IV through VII, that Defendant used a telephone to facilitate or cause the commission of the conspiracy and the possession of cocaine with the intent to distribute, the calls and other evidence described above provides a sufficient basis for a finding of guilt on these counts.

4. Testimony by Jesus Ramirez-Padilla ("Gallo")

Defendant next asserts that it was improper for the Court to allow Gallo to testify as to his understanding of the meaning of certain Title III-authorized phone conversations between him and Gallo, and should thus reverse Defendant's conviction on Counts II through VII. Gallo testified that on certain of the designated calls, it was his understanding that he and Defendant were discussing Defendant's desire to purchase cocaine from Gallo. Defendant asserts that the government failed to lay a foundation because Gallo testified that he did not know what Defendant meant on certain occasions. However, pursuant to Federal Rule of Evidence 701, a lay witness may testify to an opinion that is "rationally based on the witness's perception and helpful to clearly understanding the witness's testimony or to determining a fact in issue." *Nichols v. Ill. Dep't of Transp.*, No. 12 C 1789, 2016 WL 212917, at *16 (N.D. Ill. Jan. 19, 2016). As noted by the government, given that Gallo and Defendant communicated in code, Gallo's testimony regarding his understanding of the words that were used during the phone calls was important for the jury to hear. Moreover, Defendant's attorney cross-examined Gallo on his testimony regarding the meaning of the calls, and the jury was entitled to assess the witnesses' credibility and decide who they believed.

5. Ineffective Assistance of Counsel

Defendant last asserts that counsel was ineffective for failing to subpoena and present the testimony of Abel Galindo-Herrera and David Hernandez, who allegedly heard Gallo tell Defendant at the Kankakee County Jail in October 2012 that Gallo would write a letter to the government explaining that Defendant had nothing to do with the charged conspiracy. As an initial matter, claims of ineffective assistance of counsel usually involve evidence outside of the trial record; thus, such claims are generally best brought for the first time in a § 2255 motion. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. James*, 635 F.3d 909, 916 (7th Cir. 2011). Assuming for purposes of this motion that this claim is properly brought here, a defendant asserting an ineffective assistance of counsel claim must show that counsel's performance was objectively deficient and this lack of competent representation resulted in prejudice. *See United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687–96 (1993)). To show prejudice, the defendant must show there is a reasonable probability that but for counsel's mistakes, the result of the proceedings would have been different. *See id.* Defendant makes no such showing. Moreover, the Court presumes that Defendant's counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Trial counsel's decision not to call these witnesses may very well have been a strategic decision in that he did not want them to be subjected to cross-examination. See *United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011) ("Trial tactics are a matter of professional judgment, and . . . we will not play

7

'Monday [or Tuesday] morning quarterback' when reviewing claims that an attorney rendered constitutionally deficient representation in making decisions on how to best handle a case.") (citations omitted).

**Conclusion**

For the reasons stated above, Defendant's motions for acquittal notwithstanding the verdict and motion for a new trial (Dkt. ## 1073, 1181) are denied.

**Date**: June 15, 2016

_____
Ronald A. Guzmán
United States District Judge